Michael **MANUEL**, Plaintiff,

v.

**HONDA R & D AMERICAS, INC.**, Defendant.

No. C–3–00–557.

United States District Court, S.D. Ohio, Western Division.

Sept. 4, 2001.

David E. Stenson, David E. Stenson & Assoc., Dayton, OH, for Plaintiff.

Christopher J. Yost, Jonathan R. Vaughn, Vorys Sater Seymour & Pease, Columbus, OH, for Defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO DISMISS (DOC. # 2-1); DEFENDANT'S MOTION, IN THE ALTERNATIVE, TO STAY PLAINTIFF'S CLAIMS (DOC. # 2-2) IS OVERRULED AS MOOT; JUDGMENT TO ISSUE ACCORDINGLY; TERMINATION ENTRY

RICE, Chief Judge.

This litigation arises out of the refusal of Defendant Honda R & D Americas, Inc. ("HR & D"), to permit Plaintiff Michael Manuel ("Manuel") to work at its Ohio Center during late 1997 and January, 1998.

Between February 5, 1989, and July 26, 1995, Plaintiff was employed by HR & D at its Los Angeles Center (Allen Aff. ¶ 2). In 1993, he applied for a lateral transfer to HR & D's Ohio Center (*id.* ¶ 3). However, Plaintiff was not hired to work at that site (*id.*).

On July 26, 1995, Plaintiff resigned from HR & D. He subsequently filed suit in the Superior Court of California, Los Angeles County, Case No. YC 027230, alleging employment discrimination and constructive discharge (Doc. # 2, Ex. 1A). On April 27, 1997, Plaintiff and HR & D entered into a Settlement Agreement, which was filed with the state court (V.Compl.¶ 4). The agreement provided, *inter alia,* that Manuel could not seek re-employment with Honda or any affiliate at any time in the future (*id.* ¶ 5).

According to his Complaint, in June 9, 1997, Plaintiff was hired as a design engineer by Green Tokai Company, Ltd. (*id.* ¶ 6). A majority of Green Tokai's contracts were with Honda, and the company had hired Plaintiff due to his experience with Honda designs (*id.* ¶ 7). Plaintiff was assigned to work as a guest design engineer at HR & D's Ohio Center. In that capacity, he went to several meetings, in which he was introduced to Honda personnel (*id.* ¶ 8). At one such meeting, he became aware that individuals in management positions at the Ohio plant were individuals with whom he had had contact in California (*id.*). Subsequently, HR & D's management began to dissuade Plaintiff from coming to the plant.

On January 15, 1998, HR & D contacted the Union County Sheriff's Office, claiming that Manuel had been fired by Honda, that he had assaulted people in the past, and that he may be carrying a weapon (*id.* ¶ 11). Manuel was escorted from the Ohio Center by Sheriff's deputies (*id.* ¶ 14). Following that incident, Plaintiff was no

longer allowed to perform his duties as a design engineer for Green Tokai (*id.* ¶ 12). He was ultimately discharged by the company (*id.* ¶ 13).

On November 17, 2000, Plaintiff initiated the instant litigation against HR & D, alleging five causes of action, to wit: (1) claims for hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a state law claim for breach of contract (Settlement Agreement); (3) a state law claim for slander and defamation; (4) a state law claim for violation of public policy, arising out of the breach of the Settlement Agreement; and (5) a claim for race discrimination, in violation of 42 U.S.C. § 1981.

Pending before the Court is Defendant's Motion to Dismiss (Doc. # 2–1) or, in the Alternative, to Stay Plaintiff's Claims (Doc. # 2–2). For the reasons assigned, Defendant's Motion to Dismiss is SUSTAINED. Its Motion, in the Alternative, is OVERRULED as MOOT.

In its Motion to Dismiss, HR & D asserts six grounds for the dismissal of Plaintiff's claims. In its primary argument, Defendant contends that all of Plaintiff's claims are subject to the arbitration provision in the Settlement Agreement, a provision which must be enforced, pursuant to the Federal Arbitration Act ("FAA"). In the alternative, Defendant sets forth five bases for the dismissal of each individual claim. *First,* it argues that the Court lacks subject matter jurisdiction over Plaintiff's hostile work environment/retaliation claim, because he failed to exhaust his administrative remedies. *Second,* it argues that the breach of contract claim is subject to the arbitration provision in the Settlement Agreement. *Third,* Defendant asserts that Plaintiff's slander and defamation claim is barred by Ohio's statute of limitations for that claim. *Fourth,* HR & D asserts that Plaintiff's public policy tort claim is a recharacterization of his breach of contract claim, which is impermissible as a matter of law. *Fifth,* Defendant argues that Plaintiff's § 1981 claim is barred by the applicable two-year statute of limitations. As a means of analysis, the Court will address the enforceability of the arbitration clause at issue and then, if necessary, turn to Defendant's arguments in the alternative.

The Federal Arbitration Act ("FAA") was designed to quell the traditional common-law hostility to arbitration clauses and to ensure enforcement of such agreements. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *see Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). To that end, Congress provided that provisions in any "contract evidencing a transaction involving commerce" which provide for settlement by arbitration of disputes arising out of such contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2 (1947).

In determining whether the parties agreed to arbitrate their dispute, the Court is to use the federal substantive law of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* The FAA mandates that district courts refer parties to arbitration on issues as to which the parties have agreed to arbitrate. *Byrd,* 470 U.S. at 218, 105 S.Ct. 1238. Conversely, the FAA *"re-*

*quires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20, 103 S.Ct. 927 (emphasis in original).

When considering a motion to dismiss, due to an arbitration provision, a court has four tasks: *first,* it must determine whether the parties agreed to arbitrate; *second,* it must determine the scope of that agreement; *third,* if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and *fourth,* if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. See *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.,* 760 F.Supp. 1273, 1278 (S.D.Ohio 1990); *Stout v. Byrider,* 228 F.3d 709, 714–15 (6th Cir.2000).

Although the FAA provides that arbitration agreements are valid, such provisions may be attacked under "such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. The Supreme Court has stated that general state contract principles, as opposed to state laws applicable only to arbitration provisions, may regulate, and in the appropriate case, invalidate, arbitration clauses. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 684–85, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Andersons, Inc., v. Horton Farms, Inc.,* 166 F.3d 308, 322 (6th Cir.1998). Recognized defenses include fraud, duress and unconscionability. *Id.* Federal courts apply state law to determine whether any of these defenses is applicable. *Id.* When a party attacks the arbitration provision by asserting that the provision itself is unconscionable, the enforceability of the arbitration provision is an issue for the Court. *Id.; Stout v. Byrider,* 228 F.3d 709, 714 (6th Cir.2000)("Claims relating to fraud in the making of the arbitration agreement

are determined by the court."). In contrast, where a party alleges that the contract as a whole is unconscionable, the issue of the enforceability of the contract is arbitrable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 933 (6th Cir.1998); *Coleman v. Prudential Bache Sec., Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986)("Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the arbitration agreement."). "Unconscionability is determined by reference to the relative benefit of the bargain to the parties at the time of its making, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties." *United States v. Bedford Assocs.,* 657 F.2d 1300, 1312–13 (2d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). To establish that an agreement is unconscionable under Ohio law, the complaining party must demonstrate: 1) substantive unconscionability, by showing that the contract terms are unfair and unreasonable, and 2) procedural unconscionability, by showing that the circumstances surrounding the contract were so unfair as to cause there to be no voluntary meeting of the minds. *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 621 N.E.2d 1294, 1299 (1993).

Herein, Paragraph Sixteen of the Settlement Agreement between Manuel and HR & D, dated April 28, 1997 (Doc. # 2, Ex.1A), sets forth the terms regarding arbitration. It provides, in pertinent part:

(a) Any claim or controversy arising out of or relating to this Agreement or any breach thereof shall be submitted to arbitration in Los Angeles County, Cali-

fornia, before an experienced employment arbitrator licensed to practice law in California and selected in accordance with the Model Employment Arbitration Procedures of the American Arbitration Association, as the exclusive remedy for such claim or controversy. Any party desiring to arbitrate shall give written notice to the other party's counsel of record in this lawsuit. The decision of the arbitrator shall be final and binding. Judgment on any award rendered by such arbitrator may be entered in any court having jurisdiction over the subject matter of the controversy. Each party shall pay the fees of their respective attorneys, the expenses of their witnesses and any other expenses connected with presenting their case. The fees and costs of the arbitrator and the cost of any record or transcript of the arbitration shall be borne by the losing party.

(b) Should Manuel or Honda institute any legal action or administrative proceeding with respect to any Claim or Claims waived by this Agreement or pursue any claim or controversy covered by this Sixteenth Paragraph by any method other than said arbitration, the responding party shall be entitled to recover from the other party all damages, costs, expenses and attorneys' fees incurred as a result of such action or proceeding.

(Doc. # 2, Ex. 1A at 7).

In his Opposition Memorandum, Plaintiff challenges the enforceability of Paragraph 16(a) on a variety of grounds.[1] *First*, he argues that the fee-shifting agreement is unconscionable. *Second*, he

asserts that the language of the Settlement Agreement is so broad that it constitutes an unreasonable restraint of trade, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. *Third*, Manuel contends that the Settlement Agreement did not put him on notice that he was bound to arbitrate his Title VII claims and, therefore, his waiver of those claims was not voluntary. *Fourth*, he argues that the Settlement Agreement provides for a prospective waiver of his Title VII claims, which is unconscionable.

## A. *Effect of Fee–Shifting Provision on Enforceability of Arbitration Clause*

■ Plaintiff initially argues that the arbitration provision is unconscionable, because it contains a fee-shifting provision. He asserts that the Supreme Court, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), "endorsed a system of arbitration in which employees are not required to pay for the arbitrator assigned to hear their statutory claims. There is no reason to think that the Court would have approved arbitration in the absence of this arrangement." (Doc. # 6 at 2)(quoting *Cole v. Burns Intern. Security Servs.*, 105 F.3d 1465 (D.C.Cir.1997)). The Court disagrees.

In *Gilmer*, the Supreme Court addressed whether the plaintiff's statutory claims under the ADEA could be submitted to compulsory arbitration. As required by his employment, Gilmer had registered as a securities representative with several stock exchanges, including the New York Stock Exchange (N.Y.SE). His

---

1. With regard to the four tasks that the Court must undergo, as listed *supra* on page 5, Plaintiff's arguments go primarily to the first and third issues, namely whether the parties agreed to arbitrate the instant dispute and whether Plaintiff's Title VII claims are subject to arbitration. Plaintiff has *not* asserted that

any of his claims fall outside the scope of paragraph 16 of the Settlement Agreement (second issue). Because Plaintiff must arbitrate each claim, *see infra*, the Court need not reach the fourth issue, namely whether to stay this proceeding pending arbitration of certain claims.

registration application provided, among other things, that Gilmer "agree[d] to arbitrate any dispute, claim or controversy" arising between him and his employer "that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register." NYSE Rule 347 provides for arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative." After his termination, at the age of 62, Gilmer filed suit against his employer, alleging violations of the ADEA. His employer moved the court to compel arbitration, in accordance with the FAA and the registration application.

After concluding that nothing in the ADEA precluded arbitration of the plaintiff's statutory claim, the Supreme Court addressed several challenges to the adequacy of the arbitration procedures. The Court rejected Gilmer's arguments that the arbitration panels will be biased; that arbitration provides less adequate discovery; that the arbitration forum limited broad equitable relief and class actions; that often no written opinions are issued; and that arbitration agreements are often the result of an employer's unequal bargaining power. Looking at whether the particular arbitral forum at issue therein would provide an adequate substitute for a judicial forum in protecting his rights, the *Gilmer* Court rejected the plaintiff's arguments, on the ground that the proscribed arbitral forum's rules were sufficient to render the forum adequate. *Id.* at 30–32, 111 S.Ct. 1647. In so doing, the Court made clear that a party agreeing to arbitrate a federal statutory claim does *not* forgo the substantive rights afforded by the statute, and that claims under federal statutes are appropriate for arbitration, so long as the prospective litigant effectively may vindicate his or her statutory cause of

action in the arbitral forum, and the statute will continue to serve both its remedial and deterrent function. *Id.; see Williams,* 197 F.3d at 763. The Court in *Gilmer* did not consider the question of whether an arbitration forum that requires an ADEA claimant to pay all or part of the arbitrators' compensation can be an adequate substitute for a judicial forum.

More recently, the Supreme Court addressed whether an arbitration agreement is rendered unenforceable due to silence in the agreement regarding the allocation of costs. *Green Tree Financial Corp.-Ala. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The Court concluded that the provision remained enforceable, reasoning:

> It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, "we lack ... information about how claimants fare under Green Tree's arbitration clause." 178 F.3d at 1158. The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

121 S.Ct. at 522 (footnote omitted). The Court continued: "... we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such

costs. Randolph did not meet that burden." *Id.*

In the wake of *Gilmer,* a number of federal courts of appeals, although not the Sixth Circuit, have addressed whether fee-splitting provisions *necessarily* render arbitration agreements unenforceable, based on the contention that, by requiring employees to pay part or all of the arbitration costs, such provisions deter employees who have been victims of discrimination from pursuing their rights. All federal courts of appeals appear to agree that fee-splitting *can* render an arbitration agreement unenforceable where the arbitration fees and costs are so prohibitive as effectively to deny the employee access to the arbitral forum. They are divided, however, on the issue of whether the presence of such a provision *automatically* renders an arbitration agreement unenforceable, even in the absence of a showing of individual hardship or deterrence. *See Bradford,* 238 F.3d at 553. A number of courts have held that such agreements are invalid *per se,* reasoning that the fee shifting provision prevents arbitration from serving as an effective and accessible alternative forum. *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998); *Cole, supra; Shankle v. B–G Maintenance Mgmt. of Colo., Inc.,* 163 F.3d 1230, 1235 (10th Cir.1999). For example, the Eleventh Circuit reasoned in *Paladino, supra:*

> Because Avnet [the employer] makes no promises to pay for an arbitrator, employees may be liable for at least half the hefty cost of an arbitration and must, according to the American Arbitration Association rules the clause explicitly adopts, pay steep filing fees (in this case $2000). One circuit has in dicta stated that such "fee-shifting" is a per se basis for nonenforcement. *Cole,* 105 F.3d at 1484. We consider costs of this magnitude a legitimate basis for a

conclusion that the clause does not comport with statutory policy.

134 F.3d at 1062 (footnote omitted).

Other federal courts have evaluated such agreements on a case-by-case basis, looking at the individual plaintiff's circumstances to determine whether the fee-shifting provision, in fact, had a deterrent effect or caused arbitration to be an unreasonable alternative to the judicial forum. *See Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549 (4th Cir. 2001); *Williams v. Cigna Financial Advisors, Inc.,* 197 F.3d 752 (5th Cir.1999); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1 (1st Cir. 1999). In adopting this approach, the Fourth Circuit reasoned:

> [T]he crucial inquiry under *Gilmer* is whether the particular claimant has an adequate and accessible substitute forum in which to resolve his statutory rights and that *Gilmer* does not call for the conclusion that fee splitting, in all cases, deprives the claimant of such a forum. We believe that the appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, *i.e.,* a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims. Although the *Cole* court framed its concern with fee-splitting partially in terms of the fact that arbitrators' fees are "unlike anything that [a claimant] would have to pay to pursue his statutory claims in court" because a claimant normally "would be free to pursue his claims in court without having to pay for the services of a judge," we believe that the

proper inquiry under *Gilmer* is not where the money goes but rather the amount of money that ultimately will be paid by the claimant. Indeed, we fail to see how a claimant could be deterred from pursuing his statutory rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court.

238 F.3d at 556 (citations omitted). The *Bradford* court further relied on the Supreme Court's holding in *Green Tree*, stating: "The *Green Tree* Court's refusal to accept the speculative risk that a claimant might incur prohibitive costs undermines the rationale of those courts that would impose a *per se* prohibition against an arbitration provision that might impose prohibitive costs against an individual on the theory that any such risk of prohibitive costs, even if that risk is entirely uncertain, surely deters the bringing of arbitration." *Id.* at 557.

Upon review of the relevant case law, this Court concludes that the *per se* invalidation of an arbitration agreement, due to the presence of a fee-splitting provision, contradicts the Supreme Court's declaration that a party wishing to invalidate an arbitration provision bears the burden of proving the likelihood of incurring prohibitively expensive costs. The *Green Tree* decision did *not* endorse the idea that *any* incurring of arbitration expenses by an employee is necessarily prohibitive. Rather, the Supreme Court's reasoning supports an examination of the *actual* effect of a fee-splitting provision on the plaintiff's ability to pursue her statutory claim, particularly in light of the fact that total litigation expenses frequently far exceed the cost of arbitration. As stated in *Bradford, supra:*

Although *Green Tree* involved a slightly different fact situation than the present case because it involved an arbitration

agreement that remained silent on the issue of costs as opposed to explicitly requiring fee-splitting, we believe that it is nevertheless instructive because it clearly analyzed the issue before it— whether the possibility of fee-splitting precludes a litigant from effectively vindicating her federal statutory rights in the arbitral forum—in terms of the individual litigant and the arbitration agreement before it, rather than in terms of a broad per se rule that would nullify or invalidate an entire category of arbitration provisions. Notably, the *Green Tree* Court suggested that some showing of individualized prohibitive expense would be necessary to invalidate an arbitration agreement on the ground that fee splitting would be prohibitively expensive, although it did not decide that issue. *See id.* at 522–23 ("How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss...."). We believe that the *Green Tree* Court's focus on Randolph's individualized costs and, by inference, the individualized deterrent effect arising from those costs, cautions against adopting the broad *per se* rule sought by Bradford.

238 F.3d at 557. Accordingly, this Court rejects Plaintiff's contention herein that the mere presence of a fee-splitting provision in the Settlement Agreement requires invalidation of that provision and, instead, endorses the case-by-case analysis employed by the Fourth Circuit. The Court concludes that, in the absence of evidence that the fee-splitting provision will result in prohibitively expensive arbitration costs for him, the arbitration provision remains enforceable.

Applying this approach, Plaintiff has not provided a sufficient basis for concluding that the fee-shifting agreement is unrea-

sonable. Although he faces the potential of being saddled with a substantial portion of the cost of arbitration (*e.g.*, all of the fees and costs of the arbitrator and the cost of any record or transcript of the arbitration, in addition to his own attorney fees, witness fees, and other costs of preparing his case) should he ultimately lose in that forum, there is no indication of the potential total cost. In addition, neither party has provided the Court with the anticipated cost of litigating this matter, as opposed to arbitrating it, for the Court to use as a comparison. Moreover, Plaintiff has not indicated his financial ability to bear such costs. Accordingly, there is no record from which the Court may conclude that the fee-shifting portion of Paragraph 16 of the Settlement Agreement has deterred Plaintiff from pursuing arbitration and unreasonably burdens his ability to pursue his statutory claims. In other words, Plaintiff has not met his burden of providing a evidentiary basis for the Court to invalidate the arbitration provision, solely on the ground that it contains a fee-shifting requirement. Any conclusion by the Court that the fee-shifting provision had a detrimental effect on Plaintiff's ability to pursue his statutory rights would be merely speculative. Accordingly, in the absence of evidence that the fee-shifting provision, in fact, has resulted in arbitration not providing a reasonable alternative forum for this Plaintiff, the Court concludes that the arbitration provision is not substantively unconscionable, due to that fee-shifting requirement.

The Court further notes that the factual circumstances giving rise to this litigation differ from the typical case seeking to invalidate an arbitration provision due to a fee-shifting provision. In the vast majority of case law on the subject, the arbitration had been imposed on an employee by the employer as a mandatory condition of employment, a circumstance in which the employer typically has substantially great-

er bargaining power than the employee. *See, e.g., Cole,* 105 F.3d at 1484–85 ("Arbitration will occur in this case only because it has been mandated by the employer as a condition of employment. Absent this requirement, the employee would be free to pursue his claims in court without having to pay for the services of a judge. In such a circumstance—where arbitration has been imposed by the employer and occurs only at the option of the employer—arbitrators' fees should be borne solely by the employer."). Such is not the case here. At the time that the Settlement Agreement was signed, Plaintiff and Defendant were attempting to resolve a lawsuit, arising from a past employment relationship. Unlike the potential employee whose hiring depends upon acceptance of his employer's terms of employment, Plaintiff's livelihood was not dependent upon agreeing to the terms of the Settlement Agreement. Both parties were represented by counsel, and each was free to reject settlement in favor of continued litigation. Moreover, there is no indication that either party had greater bargaining power or greater expertise, such that the Court could conclude that Plaintiff accepted the arbitration provision under great pressure from Defendant. To the contrary, the Settlement Agreement indicates that Plaintiff was fully advised by counsel regarding its terms (Doc. # 2, Ex. 1A, statement of counsel). Thus, there is no indication that the terms of the arbitration provision herein were procured by Defendant in any unreasonable manner, and Plaintiff has not established that the circumstances giving rise to those terms were procedurally unconscionable. Accordingly, the Court concludes that the presence of the fee-shifting provision in the Settlement Agreement does not render that provision unenforceable.

## B. Settlement Agreement is Overbroad and Unlawfully Restrains Trade

■ In his second argument, Plaintiff asserts that the Settlement Agreement is overbroad and restrictive, such that it constitutes a violation of Section 1 of the Sherman Antitrust Act.[2] In particular, he cites to the contract's provision that he "will not be reemployed by Honda and that he will not apply for or otherwise seek employment with Honda or any affiliate at any time in the future." (Doc. # 2, Ex. 1A ¶ 2). Plaintiff argues that "[i]f the contract at issue is so broad and restrictive that Mr. Manuel may not work for any entity that arguably might contract to do business with Honda, he submits that Honda may have deprived him of his means of earning a living in his trade and deprived the community of his services." (Doc. # 6 at 3–4).

By this argument, Plaintiff has not challenged that enforceability of the arbitration provision itself but, rather, has questioned the validity of the contract as a whole. As stated above, where a party alleges that the contract as a whole is unconscionable, the issue of the enforceability of the contract is arbitrable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 933 (6th Cir.1998). Accordingly, Plaintiff's challenge to Paragraph 2 of the Settlement Agreement, on the ground that HR & D has interpreted it in an overly broad manner, is a question for the arbitrator, in accordance with Paragraph 16(a), and not for the Court. The Court will not invalidate the arbitration provision on this basis.

## C. Notice that Title VII Claims Must be Arbitrated/ Involuntary Waiver

■ Plaintiff asserts that he did not knowingly agree to arbitrate his current Title VII claims, because the Settlement Agreement did not specifically mention that prospective Title VII claims would be covered under the contract. Relying on *Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299 (9th Cir.1994),[3] Plaintiff argues

---

2. Section 1 of the Sherman Act provides that every contract, combination and conspiracy in restraint of trade is illegal.

3. In *Lai*, the plaintiffs were employed as sales representatives by the Prudential Insurance Company of America. When applying for their positions, they were required to sign U–4 forms containing agreements "to arbitrate ny dispute, claim or controversy that ... is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register." The plaintiffs subsequently registered with the National Association of Securities Dealers, which requires that disputes "arising in connection with the business" of its members be arbitrated. The plaintiffs alleged that when they signed the U–4 form, they were told only that they were applying to take a test which was required for their employment by Prudential, and that they were simply directed to sign in the relevant place without being given an opportunity to read the forms. Arbitration was never mentioned, and the plaintiffs were never given a copy of the NASD Manual, which contains the actual terms of the arbitration agreement. The plaintiffs subsequently brought suit under Title VII, alleging sexual harassment.

Upon review of Supreme Court authority and the legislative history of the Civil Rights Act of 1991, the Ninth Circuit concluded that a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration. Turning to the case before it, the court found the arbitration provisions unenforceable, reasoning that even assuming that the plaintiffs were aware of the nature of the U 4 form, they could not have understood that in signing it, they were agreeing to arbitrate sexual discrimination suits. Moreover, even if the plaintiffs had signed a contract containing the NASD arbitration clause, it would not put them on notice that they were bound to arbitrate Title VII claims. The Court further noted that the plaintiffs' employment contracts did not describe any disputes which they were bound to arbitrate.

that, for the arbitration provision to be enforceable, the agreement must have put him on notice that, in signing it, he was agreeing to arbitrate prospective Title VII claims.

In *Haskins v. Prudential Ins. Co. of America*, 230 F.3d 231 (6th Cir.2000), the Sixth Circuit addressed factual circumstances virtually identical to those presented in *Lai*. The court noted that three approaches have been taken, to wit:

> The Ninth Circuit has concluded that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration." *Prudential Insurance Co. of America v. Lai*, 42 F.3d 1299, 1305 (9th Cir.1994), *cert. denied*, 516 U.S. 812, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995) (emphasis added). The First Circuit has concluded as the district court did in this case, finding that arbitration may only be compelled in appropriate cases. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 20 (1st Cir.1999). Finally, a district court in this Circuit has held that "a party is generally chargeable with knowledge of the existence and scope of an arbitration clause within a document signed by that party, in the absence of fraud, deception, or other misconduct that would excuse the lack of such knowledge." *Beauchamp v. Great West Life Assurance Co.*, 918 F.Supp. 1091, 1098 (E.D.Mich. 1996).

230 F.3d at 235. The Sixth Circuit explicitly adopted the approach set forth in *Beauchamp*, stating "that adoption of the standard announced in *Beauchamp* is superior to the standards set forth in *Rosenberg* and *Lai* because it does not plainly

ignore long-standing rules of contract law." 230 F.3d at 239. As the court explained:

> Were the court to adopt the rationale set forth in either *Rosenberg* or *Lai*, it would in effect hold that a party to a contract is not chargeable with the knowledge of the terms contained in the contract. Further, adopting either *Rosenberg* or *Lai* would serve to release a party from his obligations under a contract with absolutely no basis in contract law. . . . Further, as to the Ninth Circuit's decision in *Lai*, it has been rejected by nearly every court that has had an opportunity to pass upon it.

*Id.* Thus, absent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate. *Id.*

In the present case, Plaintiff has agreed to arbitrate "[a]ny claim or controversy arising out of or relating to this Agreement or any breach thereof." This Court and other courts have construed the phrase "arising out of or relating to" broadly, interpreting it to encompass all claims, contractual or tort, which touch upon matters covered by the agreement. *See, e.g., Parsley v. Terminix International Co.*, 1998 WL 1572764 (S.D.Ohio Sept.15, 1998)(Rice, J.); *Battaglia v. McKendry*, 233 F.3d 720 (3d Cir.2000). Plaintiff's instant Title VII claim arises out of or relates to the Settlement Agreement, in that he alleges that the hostile work environment and retaliation was the result of HR & D making false allegations to Plaintiff's employer due to "an imagined breach of the settlement agreement entered into by both Plaintiff and Defendant." [4] Thus, without a showing of fraud, duress, or mistake in the creation of the

4. As noted previously, Plaintiff has not asserted that his Title VII claim falls outside the scope of the arbitration provision.

arbitration provision, this Court has no basis to find that provision unenforceable. Plaintiff's argument that the provision should not be enforced, due to lack of notice, is without merit.

D. *Prospective Waiver of Title VII Claim is Unconscionable*

■ Plaintiff asserts that the arbitration provision should not be enforced, on the ground that an agreement mandating arbitration, which is created prior to a Title VII claim arising, violates public policy. In support of that argument, Plaintiff cites to the legislative history for section 118 of the Civil Rights Act of 1991 (the arbitration provision), in which Representative Edwards, the Chairman of the House Committee on Education and Labor stated: "This section contemplates the use of voluntary arbitration to resolve specific disputes after they have arisen, not coercive attempts to force employees in advance to forego statutory rights. No approval whatsoever is intended of the Supreme Court's recent decision in *Gilmer* ..., or any application or extension of it to Title VII." 137 Cong. Rec. H9530 (daily ed. Nov. 7, 1991) (statement of Rep. Edwards); *Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182, 1197 (9th Cir.1998).

Although Plaintiff cites to legislative history suggesting that pre-dispute arbitration agreements should not enforced, the Supreme Court and the Sixth Circuit have repeatedly affirmed the permissibility of such agreements. *E.g., Haskins, supra* (plaintiff was required to arbitrate race and age discrimination claims, because he was presumed to know that his agreement to arbitrate "any dispute, claim or controversy" with the defendant included such claims); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 310 (6th Cir.1991)(applying the reasoning in *Gilmer* to conclude that enforcement of an agreement to arbitrate a Title VII claim was enforceable); *Trumbull v. Century Mktg. Corp.,* 12 F.Supp.2d 683, 686 (N.D.Ohio 1998)("[T]he Supreme Court and the Sixth Circuit have clearly held that an individual's right to pursue a Title VII employment discrimination claim in a federal court can be waived in an employment contract."). In light of the overwhelming authority, enforcing employment contracts which provide for arbitration of Title VII claims which may later arise during the course of employment, Plaintiff's argument that enforcement of pre-dispute agreements to arbitrate violate public policy is unavailing.

In summary, Plaintiff has not established that Paragraph 16 of the Settlement Agreement, which requires arbitration of disputes arising out of or relating to that contract, is unenforceable. Plaintiff agreed to that provision, and there is no evidence that the fee-shifting provision therein had a detrimental effect on Plaintiff's ability to pursue his statutory (Title VII) claim, such that enforcement is unreasonable. The Court further rejects Plaintiff's arguments that the arbitration provision should not be enforced, because his waiver of the judicial forum for his Title VII claim was not knowingly made and was given prior to his Title VII claim arising. In addition, Plaintiff has neither argued nor demonstrated that any of his claims fall outside the scope of the arbitration provision. Accordingly, the Court concludes that each of Plaintiff's claims must be submitted to arbitration, pursuant to Paragraph 16 of the Settlement Agreement. Whether the Settlement Agreement, as a whole, should be invalidated, on the ground that it is overbroad and unlawfully restrains trade, is an issue for the arbitrator.

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. # 2–1), on the ground that the parties had previously

agreed to arbitrate each of Plaintiff's claims, is SUSTAINED.[5]

Judgment will be entered in favor of the Defendant and against the Plaintiff, dismissing the captioned cause, with prejudice.

WHEREFORE, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

5. Because the parties have agreed to arbitrate Plaintiff's claims herein, the Court need not address Defendant's arguments, in the alternative. The Court notes, however, that Plaintiff does not dispute Defendant's alternate arguments with regard to his breach of contract, slander/defamation, public policy, and § 1981 claims.

In addition, because each of Plaintiff's claims must be submitted to arbitration, dismissal of this action is proper, and the Court need not address Defendant's Motion, in the Alternative, to Stay these proceedings. *Hensel v. Cargill, Inc.,* 1999 WL 993775 (6th Cir. Oct.19, 1999)("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed.") (citations omitted). Accordingly, that Motion (Doc. # 2-2) is OVERRULED as MOOT.