105 F.3d 659
 70 Empl. Prac. Dec. P 44,602
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Claudia COSGROVE, Plaintiff-Appellant,
v.
SHEARSON LEHMAN BROTHERS, Defendant-Appellee.
 No. 95-3432.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1997.
 
 Before: WELLFORD, NORRIS, and DAUGHTREY, Circuit Judges.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiff, Claudia Cosgrove, was employed as a sales assistant by defendant, Shearson Lehman Brothers. When she initially applied for a job with the firm, she signed an employment application which included the following clause:
 
 
 2
 I hereby agree that any controversy arising out of or in connection with my compensation, employment or termination of employment shall be submitted to arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc. or the American Stock Exchange Inc. and be resolved in accordance with the rules, then in effect, of such entities.
 
 
 3
 In 1992, plaintiff filed a suit in federal district court alleging sexual harassment and retaliation in violation of Title VII, as well as state law claims for retaliation and intentional infliction of emotional distress. The district court granted defendant's motion to stay the matter pending arbitration, and a three-arbitrator panel subsequently dismissed plaintiff's claims in their entirety.
 
 
 4
 After the arbitration proceedings were concluded, plaintiff returned to the federal district court and filed a motion seeking relief from the stay and requesting that a trial date be set. The district court denied this motion and, instead, granted defendant's cross-motion for enforcement of the arbitration award. This timely appeal followed.
 
 
 5
 Plaintiff initially contends that employment contract disputes, like that presented in the instant case, are not subject to the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. The Act provides that arbitration provisions in any "contract evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, Section 1 of the Act provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Over the years, there has been some controversy regarding whether the phrase "any other class of workers engaged in foreign or interstate commerce" should be read broadly to exempt virtually all employment contracts from the provisions of the Act, or narrowly, so as to exclude from coverage only employment contracts of workers personally engaged in the movement of goods in interstate commerce. In Asplundh Tree Expert Co. v. Bates, 71 F.3d 592 (6th Cir.1995), this court resolved the issue in favor of the latter interpretation. The court held that
 
 
 6
 the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are.
 
 
 7
 Id. at 600-01. Other circuits have reached the same conclusion. See Dickstein v. duPont, 443 F.2d 783 (1st Cir.1971); Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150, 351 F.2d 576 (7th Cir.1965); Signal-Stat, Corp. v. Local 475, United Elec. Radio & Mach. Workers of America, 235 F.2d 298 (2d Cir.1956); Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of America, Local 437, 207 F.2d 450 (3d Cir.1953). Thus, since plaintiff was not engaged in the movement of goods in interstate commerce in the same manner in which seamen or railroad workers are, disputes related to her employment contract with defendant are subject to the provisions of the Federal Arbitration Act.
 
 
 8
 Likewise, the fact that some of plaintiff's claims are based upon Title VII, a federal civil rights statute, does not affect the enforceability of the arbitration agreement. It is well-settled that statutory claims may be the subject of an arbitration agreement enforceable under the Federal Arbitration Act. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). The United States Supreme Court has recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). While recognizing that all statutory claims may not be appropriate for arbitration, the Court has held that "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer, 500 U.S. at 26 (quoting Mitsubishi, 473 U.S. at 628).
 
 
 9
 In Gilmer, the Court considered whether claims arising under another federal civil rights statute, the Age Discrimination in Employment Act (ADEA), could be the subject of an enforceable arbitration agreement. The Court concluded that there was no evidence of a congressional intent to preclude arbitration of ADEA claims and allowed enforcement of an agreement to arbitrate such claims. Gilmer, 500 U.S. at 35. This court subsequently found the reasoning in Gilmer equally applicable to the arbitration of claims arising under Title VII. Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 310 (6th Cir.1991). Thus, plaintiff's claims were properly resolved under the terms of the arbitration agreement she signed unless such traditional grounds for revocation of a contract as fraud or duress are present. See 9 U.S.C. § 2. Since we see no indication in the record of the presence of such defects in the execution of the agreement, we conclude that the district court properly enforced the arbitration award.
 
 
 10
 Plaintiff suggests that this court should adopt the standard articulated by the Ninth Circuit in Prudential Ins. Co. of America v. Lai, 42 F.3d 1299 (9th Cir.1994), cert. denied, 116 S.Ct. 61 (1995). The court in that case held that an arbitration agreement was unenforceable where the Title VII plaintiff did not "knowingly" enter into an agreement to arbitrate employment disputes. Id. at 1305. However, this case is clearly distinguishable from Lai. The decision in Lai was based largely upon the language of the arbitration clause at issue, which "did not purport to describe the types of disputes that were to be subject to arbitration" and "did not even refer to employment disputes." Id. at 1305. In contrast, the arbitration agreement executed by plaintiff specifically refers to arbitration of "any controversy arising out of or in connection with my compensation, employment or termination of employment." Thus, the plain language of the agreement at issue here makes clear that all employment disputes are to be resolved through arbitration. Furthermore, this was the second time that plaintiff had signed such an agreement. Accordingly, her claims were properly submitted to arbitration, and the district court properly enforced the arbitration award.
 
 
 11
 The order of the district court is affirmed.
 
 
 12
 DAUGHTREY, Circuit Judge, concurring in part and dissenting in part.
 
 
 13
 The principle is now established in our jurisprudence that courts should give effect, where possible, to the "liberal federal policy favoring arbitration agreements." See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). For that reason, I concur in the majority's conclusions that Cosgrove's employment contract dispute with Shearson Lehman Brothers is potentially subject to arbitration, Asplundh Tree Expert Co. v. Bates, 71 F.3d 592, 600-01 (6th Cir.1995), and that even Title VII claims may, in appropriate situations, be contractually restricted to an arbitral forum, Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 309 (6th Cir.1991). I respectfully dissent, however, from the majority's implication that only evidence of fraud or duress will support exercise of federal court jurisdiction over Title VII claims in the face of an agreement to arbitrate "any controversy arising out of or in connection with ... compensation, employment or termination of employment."
 
 
 14
 As we held in Willis, Title VII does not preclude an arbitral forum from handling claims made under that statute "if a party agrees to submit all statutory claims to arbitration." Id. (emphasis added). It is essential, however, that such an agreement in fact be reached. Consequently, for an employment contract like the one at issue here to be enforceable, all signatories to it must be aware that statutory and constitutional claims, as well as contractual ones, are subject to arbitration.
 
 
 15
 In determining in other contract cases whether the required meeting of the minds has occurred, courts have highlighted the level of business acumen of the litigants. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) (recognizing that Gilmer was "an experienced businessman"); Asplundh Tree Expert Co., 71 F.3d at 602 (noting that "the arbitration clause is contained in an employment contract between a highly paid executive and his corporate employer"); General Elec. Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1099 (6th Cir.1994) (taking judicial notice "that GE is a sophisticated party that is used to dealing with complex international business transactions"). Here, by contrast, the arbitration "agreement" was not a bargained-for result of discussions between equally astute business entities. Instead, the "agreement" concerning an evolving and confusing area of the law was presented to Cosgrove in a "take-it-or-leave-it" posture in a seemingly non-negotiable application for employment.
 
 
 16
 In such a situation, it is incumbent upon the judiciary to ensure that employees are not unwittingly stripped of opportunities Congress has seen fit to afford them in the presentation of employment discrimination claims. I would, therefore, REMAND this matter to the district court for a finding of whether Cosgrove was indeed aware that she would be waiving her right to bring a Title VII action in federal court merely by applying for a job with Shearson Lehman Brothers.