OPINION
Appellants, Alex and Donna Garcia ("Appellants"), bring this appeal from a Clark County Common Pleas Court decision dismissing claims against the American Arbitration Association and staying claims against Wayne Homes, LLC, pending arbitration., Appellants assert that the trial court erred in upholding the arbitration agreement, arguing that not all parties had signed the document containing the provision, that they had no notice of the provision, and that the scope of the agreement does not encompass their claims. We determine that the document was expressly incorporated by reference into the overall contract and that Appellants cannot escape the consequences of their agreement by urging they did not read it. Moreover, given that ambiguities as to the scope of these agreements must be resolved in favor of arbitration, we do not find forceful evidence assuring us of a purpose to exclude Appellants' claims. Appellants also contend that the provision amounts to an unknowing, involuntary, and unenforceable jury waiver. However, the loss of the right to a jury trial is an obvious consequence of an agreement to arbitrate and, in the absence of indicia of an adhesion contract, a party to an arbitration agreement is bound even if the clause does not expressly reference the right to a jury trial. Appellants further assert that undisclosed arbitration costs rendered the agreement unconscionable. We must, however, look to the actual effect of the provision on Appellants' ability to pursue their claims and proof of costs alone is not sufficient to prove that arbitration would be a prohibitively expensive and unreasonable alternative to litigation. Finally, Appellants argue that they presented a set of facts supporting legitimate claims entitling them to relief against the American Arbitration Association, i.e., that they misrepresented the nature of their services. Until the services are performed, however, it is premature to determine whether they are fair and equitable, or whether they are performed in accordance with particular standards or representations. Therefore, we affirm the judgment of the trial court.
Procedural history and facts relevant to issues raised on appeal are as follows. On June 27, 1999, Alex and Donna Garcia, signed a $135,186.00 "Purchase Agreement" with Wayne Homes, LLC ("Wayne Homes"), for the construction of a "Giovani" model single-family residence upon land they owned. Ground was broken for construction in December of 1999. Disputes arose concerning the timeliness and quality of construction. In September of 2000, Appellants elected to terminate their contract with Wayne Homes, contracting with another builder to complete construction.
On January 11, 2001, Wayne Homes filed a demand for arbitration through the American Arbitration Association ("AAA") to collect money owed for work performed to date. The arbitration provision upon which Wayne Homes relied was not contained in the Purchase Agreement, but was in building specifications that were incorporated by reference into the Purchase Agreement. Appellants challenged the enforceability of the arbitration provision and AAA's jurisdiction, requesting that the AAA refuse to sanction the arbitration. The AAA found that Wayne Homes' demand for arbitration was proper and indicated that the matter would proceed for further administration.
On March 6, 2001, Appellants filed the underlying complaint against Wayne Homes and AAA in the Clark County Common Pleas Court. For their action against Wayne Homes, Appellants alleged breach of contract, failure to construct in a workmanlike manner, slander of title, and various violations of the Consumer Sales Practices Act ("CSPA"), R.C. Chapter 1345, and the Deceptive Trade Practices Act ("DTPA"), R.C. Chapter 4165. In addition, Appellants submitted claims against AAA, asserting that it had conspired with Wayne Homes to deprive them of their right to a jury trial and that AAA had misrepresented the nature of its services in violation of the CSPA and DTPA.
Wayne Homes moved the trial court to either dismiss the complaint or stay the proceedings pending arbitration. In response the Appellants reasserted their challenges to the validity and enforcement of the arbitration agreement. AAA also moved the court to dismiss the claims asserted against it under Civ.R. 12(B)(6). Ultimately, the trial court stayed the proceedings against Wayne Homes pending arbitration and dismissed the claims against the AAA. The instant appeal followed., Appellants present two assignments of error for our consideration. Before we reach the merits of the assigned errors, however, we must address preliminary procedural issues, including whether Appellants are estopped from challenging the validity of the arbitration clause and whether Appellants' failure to include a transcript of a June 29, 2001 hearing precludes review.
 Estoppel
As an initial matter, Wayne Homes asserts that by participating in arbitration proceedings, the Appellants have acquiesced in the proceedings and are estopped from challenging the validity of the arbitration clause.
R.C. 2711.03 provides that a party cannot be compelled to arbitrate in the absence of a court order. Thus, a party who volunteers to submit a claim to arbitration is generally estopped from denying the arbitrator's authority after an adverse award has been issued.[1] The reasoning behind this application of the principle of estoppel has been explained as follows:
 First, the application of estoppel in such a case prevents a party from taking two bites of the same apple, i.e., submitting the case for arbitration and raising the arbitrator's lack of authority to hear the issues only in the event that an adverse award is rendered. Second, by applying estoppel to such a case a party is prevented from subjecting its opponent to a costly arbitration procedure only to later assert that the arbitrator has no jurisdiction over the dispute.[2]
In Campbell v. Automatic Die Products,[3] the Ohio Supreme Court upheld the pre-award application of estoppel. In Campbell, claims alleging the illegality or unenforceability of an arbitration provision were not raised until after the arbitrators had been chosen and a "protracted hearing took place at considerable expense [to the parties] in which a great deal of evidence was introduced and in which each of the parties was represented by counsel."[4] The Campbell court held that, in light of the parties' contractual agreement to arbitrate and the fact that the arbitration had progressed to a considerable extent, the arbitrators had correctly determined that the opponent was estopped from raising an objection to arbitration of the dispute.[5]
Herein, Wayne Homes submitted its demand for arbitration to the AAA on January 11, 2001. In lieu of submitting an answer or counterclaim to the demand, Appellants elected to challenge AAA's jurisdiction to hear the dispute and requested that AAA refuse to sanction the arbitration. The parties submitted arguments addressing the arbitrability of the dispute. Appellants argued that the arbitration agreement had not been executed by the parties and, in the alternative, asserted that the arbitration provision itself was unenforceable under various theories. On February 1, 2001, the AAA issued a letter finding that Wayne Homes' demand for arbitration was proper and, indicating that in the absence of an agreement of the parties or a court order staying the matter, AAA would proceed with further administration. On March 6, 2001, Appellants filed the underlying complaint against Wayne Homes and AAA.
In this case, unlike in Campbell, Appellants merely participated in the preliminary arbitration proceedings, interjecting immediate objections to the arbitrator's jurisdiction to hear the dispute. When the arbitrator denied Appellants' objections, they filed a complaint with the trial court to enjoin the arbitration proceedings. Only minimal preliminary steps had been taken with respect to the arbitration proceedings and the parties' ultimate dispute had not been presented to the arbitrator. Appellants never acquiesced to submission of their claims against Wayne Homes to arbitration. As such, we find that application of estoppel is not warranted in this case.
 Transcript of June 29 Hearing
Wayne Homes also argues that Appellants' failure to provide a transcript of a June 29, 2001 hearing, pursuant to App.R. 9(B), precludes appellate review of any of Appellants' alleged errors. Appellants assert that a transcript of the hearing is not required for resolution of the assigned errors since the hearing was limited to oral argument without presentation of any evidence. Appellants further contend that the trial court lacked jurisdiction to conduct the hearing because of a prior pending appeal before this Court. Consequently, we must first determine the validity of the hearing.
Upon receipt of Appellants' complaint, Wayne Homes moved the trial court to stay the proceedings pending arbitration. The court granted the motion within a week. Appellants requested and were granted an opportunity to respond to the motion, thereafter submitting a memorandum in opposition. On May 15, the trial court vacated the previous order and overruled the motion to stay. Wayne Homes moved the court to reconsider the order. On June 4, the trial court scheduled a June 29 hearing on the motion to reconsider. On June 14, Wayne Homes filed a notice of appeal to this Court challenging the same order and requesting that we stay the proceedings. While the appeal was pending, the trial court proceeded with the reconsideration hearing and, on July 3, entered an order that again stayed the proceedings pending arbitration.
"When a case has been appealed, the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify or affirm the judgment."[6] When an action is taken that is inconsistent with the reviewing court's jurisdiction, jurisdiction may be conferred on the trial court only by order of the reviewing court.[7] By entry dated July 26, 2001, we denied Wayne Homes' motion for stay of arbitration and found that the July 3 order was entered without jurisdiction. While Appellants are correct that the hearing was also held without jurisdiction, we elected to recognize the proceeding and remanded the matter for ruling upon the motion for reconsideration.
Having taken recognition of the hearing, and its consequent legitimacy, we turn to the absence of a transcript. Where an appellant has presented factual issues requiring a trial court to examine or weigh evidence presented, an appellate court must have a sufficient record to review and evaluate the evidence upon which the trial court relied in making its determination. The duty to provide the transcript of the proceedings or an allowable alternative to the transcript falls upon appellants because they bear the burden of demonstrating the claimed errors by reference to matters in the record.[8] "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm."[9]
App.R. 9 does not, however, provide a per se rule that transcripts of all proceedings be ordered for appellate review. Appellants need only provide those portions of the record "necessary for resolution of assignederrors."[10] An appellant is not required to provide a transcript of a hearing where the transcript is not necessary for proper evaluation of the appellant's claims or the evidence the trial court relied upon in reaching its decision. A transcript may not be required where no evidence was presented at a hearing[11] or the trial court's entry indicates that it did not rely upon evidence presented at a hearing for its determination.[12]
Appellants aver that, "although a hearing was held before the trial court on June 29, 2001, neither party introduced any evidence. No testimony was heard. No documents were introduced. The trial court merely heard oral argument. * * * All of the facts upon which the trial court based its decision were presented to the court through various filings made by the parties." The trial court's July 3 entry staying the proceedings supports this contention, referencing the pleadings relied upon in making the determination and indicating only that the parties were heard upon Wayne Homes' motion for reconsideration. Moreover, the facts of this case are essentially undisputed, and Appellants' claims principally involve questions of law that do not require a transcript for review. Therefore, with a complete record of evidence presented and the June 29 hearing being limited to oral argument, a transcript of the hearing is not required for proper evaluation and resolution of the assigned errors. Accordingly, we proceed to address Appellants' assigned errors.
 Assignment of Error Number One The trial court erred in staying the proceedings as against Wayne Homes pending arbitration.
For their first assignment of error, Appellants assert that the trial court erred in upholding the arbitration agreement and failed to follow the procedures set forth in R.C. 2711.02 and .03 in determining the provision's enforceability. Particularly, Appellants argue that the trial court erred when it failed to proceed to trial on issues of validity as provided in R.C. 2711.03.
As a preliminary matter, we set forth the appropriate standard for reviewing a trial court's application of R.C. Chapter 2711. Nothing in Ohio's Arbitration Act indicates that a special or different standard governs review of a trial court decision under the Act. Rather, review of trial court determinations as to whether proceedings should be stayed on the ground that the parties agreed to submit their disputes to arbitration, should proceed like review of any other court decision finding an agreement between parties, i.e., accepting findings of fact that are not "clearly erroneous" but deciding questions of law denovo.[13]
Ohio and federal courts encourage arbitration to settle disputes.[14]
Our General Assembly also favors arbitration. R.C. 2711.01 provides that arbitration clauses shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract. R.C. 2711.02 requires a court to stay an action if the issues involved fall under a valid, enforceable arbitration agreement:
 (B) If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.
"To defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced."[15] This principle is in keeping with the understanding that arbitration agreements are separable from the general contracts in which they are contained.[16] It is also in recognition of the fact that arbitration is a matter of contract, and parties cannot be required to submit to arbitration those disputes that they have not agreed to submit to arbitration.[17] Thus, when a party opposing an R.C.2711.02 motion to stay has alleged that the separate arbitration agreement is invalid, the trial court may not refer the matter to the arbitrator for resolution, but must consider those allegations in light of relevant state and federal law and must follow the procedures provided for in R.C. 2711.03.
R.C. 2711.03 provides, in pertinent part:
 (A) The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement. Five days' notice in writing of that petition shall be served upon the party in default. Service of the notice shall be made in the manner provided for the service of a summons. The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.
 (B) If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. If no jury trial is demanded as provided in this division, the court shall hear and determine that issue. Except as provided in division (C) of this section, if the issue of the making of the arbitration agreement or the failure to perform it is raised, either party, on or before the return day of the notice of the petition, may demand a jury trial of that issue. Upon the party's demand for a jury trial, the court shall make an order referring the issue to a jury called and impaneled in the manner provided in civil actions. If the jury finds that no agreement in writing for arbitration was made or that there is no default in proceeding under the agreement, the proceeding shall be dismissed. If the jury finds that an agreement for arbitration was made in writing and that there is a default in proceeding under the agreement, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with that agreement.
An R.C. 2711.03 motion to compel arbitration gives either party the right to demand a jury trial on the matters raised in the motion if the "making of the arbitration agreement or the failure to perform it is in issue", and requires courts to conduct a hearing to determine the legitimacy of arbitration clause validity challenges. However, R.C.2711.03 does not necessarily require the trial court to conduct a trial; instead, the court is directed to proceed summarily to trial solely on validity issues only when it finds that the party challenging the enforcement of the arbitration agreement has presented sufficient evidence supporting its claims. Thereafter, the court should either grant the motion to stay proceedings and compel arbitration, or deny the same. Conversely, if the court determines that the making of the arbitration agreement or the failure to perform it is not in issue after hearing the parties, the court should stay the proceedings and compel arbitration. Therefore, when determining whether a trial is necessary under R.C. 2711.03, the relevant inquiry is whether a party has presented sufficient evidence challenging the validity or enforceability of the arbitration provision to require the trial court to proceed to trial before refusing to enforce the arbitration clause.
Revised Code Chapter 2711 does not set forth the amount of evidence that must be produced to receive a trial under R.C. 2711.03. At least one Ohio court has drawn guidance from federal case law interpreting corresponding Section 4 of the Federal Arbitration Act.[18] Under this approach, courts are directed to address the matter as they would a summary judgment exercise, proceeding to trial where the party moving for the jury trial sets forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity or enforceability of the arbitration agreement.[19] The party challenging the arbitration agreement "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true. In addition, the party must produce at least some evidence to substantiate his factual allegations."[20]
In this context, the court must accept the version of the facts as presented by the party moving for a jury trial.[21] Substantive law controls which facts are considered material; those factual disputes that have the potential to affect the outcome of a lawsuit are material and would preclude summary judgment, while factual disputes that cannot affect the outcome are deemed irrelevant and will not affect the determination.[22] However, where, as here, the facts are undisputed, an appellate court must only determine whether the trial court's determination was appropriate as a matter of law.[23]
 Lack of Signatures/Notice
Appellants argue that the parties did not properly execute the Building Specifications, which contain the arbitration provision to which Wayne Homes asserts they are bound, concluding, therefore, that there is no signed writing evidencing the parties' intent to arbitrate.
On June 27, 1999, Appellants, Alex and Donna Garcia, and Wayne Homes signed a single page document entitled "Purchase Agreement," through which they contracted for the construction of a residential home in Springfield, Ohio. The first paragraph of the Purchase Agreement incorporates specified documents by reference:
 1.) This Purchase Agreement, the Work Equity Agreement, The Building Specifications and Drawing constitute the entire understanding of the Owner and Wayne Homes, hereinafter contractor, and no other understanding, collateral or otherwise, shall be binding unless in writing and signed by both Owner and Wayne Homes.
The Building Specifications (hereinafter "Specifications"), also dated June 27, 1999, is a sixteen page document divided into numerically itemized and labeled subsections with a corresponding table of contents. The arbitration clause at issue is the sixth paragraph under the first subsection, labeled "1. CONDITIONS", and appears as follows:
 All work is to be conducted in a workmanlike manner in accordance with the plans and specifications. In the event that a dispute arises concerning these building specifications or the performance of the contractor hereunder, contractor shall be permitted to make any repairs, corrections, replacements or adjustments contractor deems necessary. If after the contractor does so either party is then still dissatisfied, the remaining dispute shall be submitted to binding arbitration under the rules of the American Arbitration Association (AAA). It is understood that said arbitration will be administered by the AAA and would include the use of AAA arbitrators.
The only party to sign the Specifications was Donna Garcia. Appellants assert that, since Alex Garcia did not sign the specifications document, he had not manifested a contractual intent to submit his claims to arbitration, and the provision cannot now be enforced against him. Appellants also argue that the absence of Wayne Homes' signature prohibits enforcement of the provision for lack of mutuality of obligation. Though Appellants have attempted to supplement the record with additional allegations on appeal, these allegations are not supported by the referenced documents, are not reflected by or founded upon facts within the record of the proceedings, were not raised in the trial court, and will not be considered for purposes of this appeal.[24]
We note that nothing in the statute requires that the parties sign the written agreement.[25] Courts have consistently held that to enforce an arbitration clause it is only necessary that the provision be in writing and a party's agreement to the provision need not be evidenced by the signature of the party to be charged.[26] The reason for not requiring a party's signature on an arbitration agreement as a prerequisite to enforcement was explained by the Second Circuit Court of Appeals in Fisser v. International Bank:[27]
 It does not follow, however, that under the [Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. For the Act contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures. It is not surprising then to find a long series of decisions which recognize that the variety of ways in which a party may become bound by a written arbitration provision is limited only by generally operative principles of contract law.[28]
This reasoning is highly persuasive. The policy of the federal and state law is to favor and encourage arbitration.[29] The Ohio Supreme Court has clearly indicated that "[a]n arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected."[30]
In addition, Appellants assert that they were not told of the existence of the subject arbitration provision. In ABM Farms, Inc. v. Woods, the Ohio Supreme Court held that there is no requirement that an arbitration clause be explained orally to a party prior to signing where the provisions at issue were not in fine print, were neither hidden nor out of the ordinary, and were not misrepresented to the signatory.[31]
 "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." McAdams v. McAdams (1909), 80 Ohio St. 232, 240-241, 88 N.E. 542, 544. See, also, Upton v. Tribilcock (1875), 91 U.S. 45, 50, 23 L.Ed. 203, 205 ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written."). The legal and common-sensical axiom that one must read what one signs survives this case.[32]
"Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an instrument and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance."[33]
Accordingly, the fact that Appellants did not read the Specifications prior to signing them and were not informed of the arbitration provision would not, absent other claims or indicia of adhesion or unconscionability, release them from their obligation.
Appellants did not claim that they were not provided a copy of the Specifications or had been prevented from reading its contents prior to signing the Purchase Agreement. The arbitration provision was not in fine print, was printed legibly in the same font as other terms, was neither hidden nor out of the ordinary, and was neither affirmatively concealed nor misrepresented by Wayne Homes. At the very least, Appellants were made aware of and assented to the Specifications and arbitration clause on June 27, 1999, when they signed the Purchase Agreement. As discussed below, the record does not reflect that the agreement was an adhesion contract. Regardless of the lack of signatures on the Specifications, it is clear that the parties expressly incorporated the document by reference and they are, therefore, bound to the terms contained therein.[34] To hold that the arbitration agreement between the parties was not formed because Wayne Homes or Alex Garcia did not sign the Specifications or were not specifically informed of its existence would destroy long-standing contractual standards.
 Scope of Agreement
Appellants assert that the scope of the arbitration provision at issue is not nearly as broad as the trial court interpreted it and that several of the claims asserted by Appellants exceed the scope of the arbitration clause. Appellants isolate and seize upon the "dispute aris[ing]concerning these building specifications or the performance of contractor hereunder" language in the arbitration agreement, arguing that the provision is limited solely to disputes relating to the Specifications and does not embrace claims relating to the Purchase Agreement or any other documents or elements of the transaction between the parties.[35]
"[T]he question of arbitrability — whether [an] . . . agreement creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[36] Because the interpretation of the arbitration provision is a question of law, we review it de novo.[37]
Though parties cannot be required to submit to arbitration disputes that they have not agreed to submit,[38] an arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause[39]
and gives rise to a presumption that the grievance is arbitrable unless there exists "the most forceful evidence of a purpose to exclude the claim from arbitration."[40] "[A]s a matter of law, any doubts [or ambiguities] concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[41] A court should not deny arbitration of a claim unless it is clear that the clause is not susceptible of an interpretation that covers the asserted dispute, with any doubts resolved in favor of arbitration.[42]
As discussed above, the Purchase Agreement incorporates the Specifications and other documents by reference into a unified contractual understanding between the parties. In addition, the Specifications indicate, in bold printed capital letters on the first page of the document, that: "These Building Specifications are a part of the contract with Alex [and] Donna Garcia for construction of a house located at: 3015 Goldfinch Bend[,] Springfield, Ohio 45503[.]" The final page of the Specifications reinforces these cross-references:
 This document * * * is a restatement of some of the terms of the contract between the parties hereto. See actual document for full details.
 * * *
 Article IV. The Contractor and the Owner agreed that the purchase agreement, the Drawings, these specifications and the documents referred to therein form the contract, as if hereto attached.
Moreover, though the arbitration provision uses the term "building specifications," the first subparagraph of the Specifications under the heading "1. CONDITIONS" expressly incorporates the conditions into overall contract, stating:
 The conditions herein set forth are a part of the above referred to contract and shall be binding upon every trade-contractor, as well as owner and contractor. The plans, elevations, and detail drawings are to be considered part of these specifications, and together with the purchase agreement and any other document executed by owner and contractor, are to form the basis of this contract and are to be of equal force.[43]
Given the aforementioned language and the mandate that any doubts or ambiguities be resolved in favor of arbitration, we cannot say with positive assurance that the clause is not susceptible of an interpretation that covers all the asserted claims, much less that there exists the most forceful evidence of a purpose to exclude claims relating to other documents comprising the parties' contract.
 Jury Waiver
Appellants also argue that the arbitration provision constitutes an unenforceable jury waiver.
It is clear that a party may contractually waive the right to adjudicate disputes in a judicial forum. Waivers of jury trial in sales contracts and other forms of consumer transactions have routinely been upheld by courts in Ohio and elsewhere, absent other circumstances that would indicate that the waiver was not knowing or voluntary or that the consumer was forced into it because she had no meaningful choice in the transaction.[44]
The Sixth Circuit Court of Appeals has adopted the view that a contractual jury trial waiver is presumptively valid and that the objecting party bears the burden of demonstrating that the consent of the objecting party was not knowing and voluntary.[45] The Ohio Supreme Court has had little difficulty upholding contractual jury trial waivers, stating:
 Section 5 of Article I of the Constitution of Ohio reads, so far as pertinent:
"The right of trial by jury shall be inviolate * * *."
 It is well settled that the foregoing constitutional provision does not prevent a court from giving effect to a waiver of a jury trial by a party who has a right to a jury trial.[46]
Absent indicia that the contract at issue is an adhesion contract, and that the arbitration clause itself appears to be adhesive in nature, an arbitration clause is to be upheld just as any other provision in a contract.[47] An arbitration clause may similarly be enforceable notwithstanding a disparity in bargaining power or the fact that the contract had not been subject to negotiation.[48]
The deference afforded arbitration provisions is succinctly summarized by the following passage in Neubrander v. Dean Witter Reynolds, Inc.:[49]
 In his third and fourth assignments of error, Neubrander asserts that enforcement of the [employment contract] arbitration provision deprived him of his right to a jury trial. We do not agree. As stated by the Supreme Court of Iowa: "The rule in more recent cases, the one which we strongly prefer and adopt, is that constitutionality of an arbitration is not compromised by the fact that one party is required to submit to it as a condition for entering a specific activity." Reicks v. Farmers Commodities Corp. (Iowa 1991), 474 N.W.2d 809. We do not believe that the trial court erred by refusing Neubrander's requests to avoid arbitration where the record reflects nothing more than Neubrander's voluntary acceptance of the arbitration terms over a chance to litigate his claims to a jury. Nor do we believe such a clause to be unconscionable. The "basic test of unconscionability of contract is whether under circumstances existing at the time of making of contract and in light of general commercial background and commercial needs of particular trade or case, clauses involved are so one-sided as to oppress or unfairly surprise party." Black's Law Dictionary (5 Ed.Rev. 1979) 1367. In the cause at bar, there is nothing to suggest that the arbitration clause was one-side or oppressed or surprised Neubrander. Accordingly, Neubrander's contentions as to the deprivation of his right to a jury trial are without merit.[50]
Appellants contend that the fact that they were not informed of the consequences of arbitration and the absence of express language in the arbitration provision informing them that they were waiving the right to a jury trial prevented the waiver from being a knowing and voluntary relinquishment of their rights. However, a contracting party is presumed to know the reasonable import of the contents of a signed agreement, including the existence and scope of an arbitration clause.[51]
"As to the failure of the arbitration clause to include a jury waiver provision, `the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'"[52]
A party who agrees to arbitration is bound even if the clause does not reference or contain an express waiver of the right to a jury trial.[53]
Appellants do not claim that they had no realistic opportunity to bargain, could not otherwise obtain the desired product or services, or had no meaningful choice in the transaction.[54] Appellants acknowledge signing the Purchase Agreement and are charged with knowledge of the contents and implications of the terms contained therein. There is nothing to suggest that the arbitration clause is one sided or inherently oppressive. Appellants do not allege that the arbitration provision was the product of an inequality in bargaining power, misrepresentation, or concealment. Moreover, having subsequently read the provision and been informed of the consequences of arbitration, Donna Garcia could not state unequivocally that she would not have executed the contract, indicating only that she "[di]d not believe that [she] would have signed the documents." Accordingly, Appellants failed to satisfy their burden of demonstrating that the arbitration agreement is adhesive in nature or that the provision amounts to an unknowing and involuntary jury waiver.
 Undisclosed Costs
Appellants contend that the undisclosed costs of arbitration violated fundamental concepts of equity and fairness, render the provision unconscionable, and warrant denial of Wayne Homes' motion to stay.
In Green Tree Financial Corp.-Alabama v. Randolph,[55] the Supreme Court held that the silence of an arbitration agreement regarding costs and fees does not alone render the agreement unenforceable. In GreenTree, the buyer of a mobile home sought to avoid the arbitration clause contained in the installment contract, arguing that she could not effectively vindicate her claims under the Truth in Lending Act because the arbitration agreement did not address how the costs of the arbitration proceeding would be allocated. The Supreme Court rejected this argument, reasoning:
 It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, "we lack . . . information about how claimants would fare under Green Tree's arbitration clause." The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.[56]
The Court continued: "[W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."[57] Though some expenses may be inherently speculative, the Court noted that generic information contained in AAA Commercial Rules and unsupported statements were not enough to satisfy the party's burden of providing factual proof that the costs were prohibitively expensive.[58]
Federal courts interpreting Green Tree have found that the issue calls for a case-by-case analysis of the individualized deterrent effect, focusing upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims or cause arbitration to be an unreasonable alternative to the judicial forum.[59] The Green Tree decision did not endorse the idea that any incurrence of arbitration expenses is necessarily prohibitive; "[r]ather, the Supreme Court's reasoning supports an examination of the actual effect of a fee-splitting provision on the plaintiff's ability to pursue * * * claim[s], particularly in light of the fact that total litigation expenses frequently far exceed the cost of arbitration."[60]
The Ohio Supreme Court's pronouncement in Williams v. Aetna Fin.Co.,[61] indicates endorsement of these principles. In determining whether arbitration provisions in the context of small consumer loans were unconscionable, the Supreme Court examined "the specific circumstances present [therein]" and noted the parallels between the situation presented and that of Patterson v. ITT Consumer Financial Corporation,[62]
wherein the court held:
 The likely effect of these procedures is to deny a borrower against whom a claim has been brought any opportunity to a hearing, much less a hearing held where the contract was signed, unless the borrower has considerable legal expertise or the money to hire a lawyer and/or prepay substantial hearing fees. * * * In a dispute over a loan of $2,000 it would scarcely make sense to spend a minimum of $850 just to obtain a participatory hearing.[63]
In contrast to the plaintiff in Green Tree, Appellants did come forward with some evidence of the costs associated with arbitration. Appellants' submitted an affidavit attesting that the total damages claimed would be at least $90,000. Attached to the affidavit was an AAA cost schedule, which indicated that in order to present their claims, Appellants would be required to pay a non-refundable fee of $1,250 and a potentially refundable case service fee of $750. In addition, Appellants asserted that they may have to pay an arbitrator's fee of $750 and unascertained hearing room costs.
As outlined above, proof of costs alone will not invalidate an arbitration clause. Appellants produced no evidence of the expected cost differential between arbitration and litigation in court. Appellants' incomplete cost estimation comprises less than 2% of the face value of the parties' $135,000 contract and could easily be exceeded by litigation expenses. Unlike Williams, we are not faced with de minimus claims, a contract of little value, one-sided prerequisite rules to arbitration, or other circumstances indicating that either the contract or arbitration provision are adhesive in nature. Moreover, Appellants did not claim that arbitration costs were so substantial as to deter them from bringing their claims or that arbitration was an unreasonable alternative to the judicial forum and that they did not have an adequate and accessible substitute forum in which to resolve their claims. Therefore, Appellants failed to produce sufficient facts or allegations supporting their claim that the undisclosed costs of arbitration rendered the provision unconscionable.
 CSPA Claims
Appellants argue that, considering all remedies available under Ohio's Consumer Sales Protection Act ("CSPA")[64] and the greater public interest in these types of cases, enforcement of the arbitration agreement permits Wayne Homes to evade public scrutiny of its business practices and some of the strongest deterrent provisions of the CSPA.
It is well settled that statutory claims may be the subject of an arbitration agreement.[65] The Supreme Court has stated that "[h]aving made the bargain to arbitrate, the party should be held to it unless [the legislature] itself has evidenced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."[66] Moreover, "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."[67]
Nothing in R.C. Chapter 1345 reflects a policy that claims falling under it be enforced in court and not in arbitration or suggests that parties to a consumer transaction covered by the CSPA cannot agree to arbitrate such matters.[68] Ohio courts have uniformly held that parties to a consumer transaction covered by the CSPA can agree to arbitrate such matters and that arbitration does not deprive the complainant of any remedies available under CSPA claims.[69] Because Appellants are able to vindicate their statutory cause of action in the arbitral forum, the statute retains its deterrent effect. In the instant case, the parties bound themselves to settle any dispute arising from the contract through arbitration and did not except CSPA claims. Therefore, Appellants' CSPA claims are subject to arbitration per the parties' agreement.
 Illegal Tying Arrangement/Antitrust Violation
Appellants have also attempted to raise for the first time on appeal the argument that the arbitration agreement forced them to purchase services from the AAA and is, therefore, an illegal tying arrangement in violation of federal and state antitrust laws.[70]
It is axiomatic that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this Court and will not be considered by this Court on appeal.[71] Moreover, it is a fundamental principle that a party receiving an adverse judgment in the common pleas court may not expand that party's claims in the court of appeals to maximize the chances of reversal or remand.[72] The fact that Appellants challenged the enforceability of the arbitration agreement on other grounds does not entitle Appellants to raise additional unrelated claims against enforceability on appeal.[73]
In conclusion, we find, based upon the foregoing discussion, that the trial court's determinations were appropriate as a matter of law. Accordingly, Appellants' first assignment of error is overruled.
 Assignment of Error Number Two The trial court erred in granting AAA's motion to dismiss.
In their second assignment of error, Appellants contend that they presented a set of facts supporting legitimate claims entitling them to relief against the AAA, arguing that the trial court erred in granting AAA's motion to dismiss for failure to state a claim. We do not agree.
For their complaint against AAA, Appellants asserted claims of civil conspiracy and violations of the Consumer Sales Practices Act and Deceptive Trade Practices Act.[74] As the basis for these claims, Appellants alleged that the AAA committed unfair and/or deceptive acts or practices by making general misrepresentations to the public regarding the nature of the arbitration services it provides to consumers, i.e., that they conform with Consumer Due Process Protocol adopted by the National Consumer Disputes Advisory Committee. The Appellants also claimed that the AAA falsely represented that its arbitration services are, and would be, fair and equitable.
In response to Appellants' complaint, AAA moved to dismiss for failure to state a claim upon which relief could be granted.[75] As grounds for their motion, AAA asserted that they were immune from this lawsuit under arbitral immunity, that they were not a real party in interest to the contract, and that the complaint was premature. The trial court summarily granted AAA's motion for the reasons articulated therein.
When reviewing a judgment granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, an appellate court must independently review the complaint to determine if dismissal is appropriate.[76] The appellate court need not defer to the trial court's decision.[77]
Dismissal of a claim for failure to state a claim upon which relief may be granted is appropriate only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[78] In construing the complaint on a motion to dismiss, pursuant to Civ.R. 12(B)(6), a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party.[79]
Like judges, arbitrators have no interest in the outcome of the dispute between the parties to the contract and should generally not be compelled to become parties to the dispute.[80] In the face of motions to dismiss, courts often apply this principle under concepts of immunity and conclusions that the arbitrators and organizing bodies are not the real parties in interest.[81] Where, however, a claim is presented asserting an independent cause of action against an arbitral body, one contending that the body has liability that is distinct from that of the parties to the arbitration proceeding and falls outside of the scope of recognized immunities, the arbitral body is a real party in interest.
Courts have long recognized that public policy strongly favors arbitration, analogizing to the principles of judicial immunity to shape the contours of arbitral immunity to suit.[82]
 The functional comparability of the arbitrators' decision-making process and judgments to those of judges and agency hearing examiners generates the same need for independent judgment, free from the threat of lawsuits. Immunity furthers this need. As with judicial and quasi judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals of dissatisfied litigants.[83]
Arbitral immunity is not limited to individual arbitrators. It has been uniformly accepted that such immunity extends to arbitration associations such as AAA as well.[84] "Extension of arbitral immunity to encompass boards that sponsor arbitration is a natural and necessary product of policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusory."[85] To impose liability upon AAA for claims would "merely serve to discourage its sponsorship of future arbitrations[;] a policy strongly encouraged by the Federal Arbitration Act."[86] "A sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration."[87] Immunity protects all acts within the scope of the arbitral process, even if the arbitrator fails to follow its own internal rules.[88] Moreover, the doctrine of immunity applies not only where arbitration is statutory or where arbitrators are court appointed, but also to arbitration arising from a contractual agreement of the parties, as in this case.[89]
A review of the current Arbitration Act, R.C. 2711.01 et seq., reflects both the public policy favoring arbitration and the General Assembly's continued interest in providing an efficient, expedited, and economical remedy to resolve disputes, with the additional advantage of unburdening crowded court dockets.[90] Contrary to Appellants' assertions, the courts of Ohio have embraced arbitral immunity, stating:
 The ability to secure such able persons as arbitrators is essential if such a system is to continue as a valuable tool of the judicial system in facing and coping with overcrowded dockets. It is, therefore, necessary and within the doctrines of quasi-judicial immunity, that arbitrators be immune from suits for acts performed within their capacity as arbitrators and performed within their assigned duties and authority.[91]
R.C. Chapter 2711 sets forth specific statutory procedures to vacate, modify, correct, or confirm an arbitration award, authorizing limited and narrow judicial review of arbitration awards. The Ohio Supreme Court has held that, akin to federal law, R.C. Chapter 2711 provides the exclusive remedy for challenging acts or omissions that taint an arbitration award, including allegations of misconduct in the proceedings or assertions that the rights of any party have been prejudiced thereby.[92] Pursuant to R.C. 2711.13, a party wishing to pursue such a challenge may move the common pleas court to vacate, correct, or modify an award only "[a]fter an award in arbitration proceeding is made[.]"[93] In Corey, the Sixth Circuit held that:
 An aggrieved party alleging a due process violation in the conduct of the proceedings, fraud, misconduct, a violation of public policy, lack of jurisdiction, etc., by arbitrators should pursue remedies against the `real' adversary through the appeal process. To allow a collateral attack against arbitrators and their judgments would emasculate the appeal provisions of the federal Arbitration Act.[94]
We find that Appellants' claims against AAA are premature. They claim that AAA falsely represented to the general public that its processes for consumer arbitration procedures are fair and equitable, and that these procedures comply with the Consumer Due Process Protocol adopted by the National Consumer Disputes Advisory Committee. In their claim under the Deceptive Trade Practices Act, Appellants claim that AAA has represented to the public and to them that its arbitration services "would be" performed in a fair and equitable manner, and in accordance with the Consumer Due Process Protocol. Until the services are performed, however, it is premature to determine whether they are fair and equitable, or whether they are performed in accordance with particular standards or representations. In other words, AAA may yet perform the services as advertised, and possibly to the entire satisfaction of the Appellants.
Whether any claim based upon AAA's failure to perform arbitration services as advertised can survive arbitral immunity is an interesting issue, but one that we decline to decide in a vacuum. Once AAA has arbitrated the dispute, if the Appellants conclude that they are aggrieved under the Consumer Sales Practices or Deceptive Trade Practices acts, they can bring an action under either or both acts, and the issue of whether their claims are barred by arbitral immunity can be litigated, along with other issues. Therefore, dismissal of Appellants' premature claims was appropriate.
Accordingly, Appellants' second assignment of error is overruled.
Having found no error prejudicial to the Appellants herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BROGAN, J. and FAIN, J., concur.
(Hon. Sumner E. Walters sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] E.S. Gallon Co. L.P.A. v. Deutsch (2001), 142 Ohio App.3d 137, 141
(citations omitted); Vermilion v. Willard Constr. Co. (July 19, 1995), Lorain App. No. 94CA006008, unreported.
[2] Vermilion, supra.
[3] Campbell v. Automatic Die Products Co. (1954), 162 Ohio St. 321, certiorari denied by, 349 U.S. 929, 75 S.Ct. 771, 99 L.Ed.2d 1260.
[4] Id. at 328.
[5] Id. at 328-329.
[6] Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc. (1994),70 Ohio St.3d 141, 146.
[7] Id. at 147.
[8] DeCato v. Goughnour (2000), 136 Ohio App.3d 795, 799.
[9] Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
[10] Id. (emphasis added).
[11] Remlinger Oldsmobile Cadillac, Inc., v. Performance West Group
(Dec. 29, 2000), Stark App. No. 2000CA00154, unreported.
[12] State v. Williams (1997), 119 Ohio App.3d 512, 516.
[13] First Options of Chicago, Inc. v. Kaplan (1995), 514 U.S. 938,947-48, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985.
[14] ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 500; SouthlandCorp. v. Keating (1984), 465 U.S. 1, 10, 104 S.Ct. 852, 858,79 L.Ed.2d 1.
[15] ABM Farms at syllabus. See, also, Krafcik v. USA EnergyConsultants, Inc. (1995), 107 Ohio App.3d 59.
[16] Prima Paint Corp. v. Flood Conklin Mfg.Co. (1967), 388 U.S. 395,402, 87 S.Ct. 1801, 1805; See, also, ABM Farms at 501.
[17] ATT Technologies, Inc. v. Communications Workers of Am. (1986),475 U.S. 643, 648, 106 S.Ct. 1415, 1418.
[18] Cross v. Carnes (1998), 132 Ohio App.3d 157, 166.
[19] Id., citing Topf v. Warnaco, Inc. (D.Conn. 1996), 942 F. Supp. 762,766-767.
[20] Dillard v. Merril Lynch, Pierce, Fenner Smith, Inc. (5th Cir. 1992), 961 F.2d 1148, 1154, certiorari denied by 506 U.S. 1079,113 S.Ct. 1046, 122 L.Ed.2d 355.
[21] Topf, 942 F. Supp. at 768.
[22] Orndorff v. Aldi, Inc. (1996), 115 Ohio App.3d 632, 635, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 106 S.Ct. 2505, 248, 91 L.Ed.2d 202, 211.
[23] Addington v. Allstate Ins. Co. (2001), 142 Ohio App.3d 677,680.
[24] Merrillat v. Fulton Cty. Bd. of Commrs. (1991), 73 Ohio App.3d 459,463; R.H. Macy Co., Inc. v. Otis Elevator Co. (1990), 51 Ohio St.3d 108,109.
[25] R.C. 2911.02.
[26] Brumm v. McDonald Co. Securities, Inc. (1992), 78 Ohio App.3d 96,102 (citations omitted); see, also 16 Williston, Contracts (1976) 163, Section 1919A; M M Precision System Corp. v. Interactive group, Inc. (March 10, 2000), Montgomery App. No. 18008, unreported; ChampaignLandmark, Inc. v. Prince (Oct. 23, 1998), Champaign App. Nos. 97 CA 28, 97 CA 29, 97 CA 30, unreported.
[27] Fisser v. International Bank (2nd Cir. 1960), 282 F.2d 231.
[28] Id. at 233
[29] ABM Farms, 81 Ohio St.3d at 500; Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 471.
[30] Aetna Fin., 83 Ohio St.3d at 417.
[31] ABM Farms, 81 Ohio St.3d at 503.
[32] Id.; see, also, Kroger v. Brody (1936), 130 Ohio St. 559,566; Haskins v. Prudential Ins. Co. of America (6th Cir. 2000),230 F.3d 231, 239; Burlile v. McCluskey Chevrolet-Geo, Inc. (6th Cir. 2001), 22 Fed.Appx. 507, 509.
[33] Kroger at 566.
[34] Bakula v. Schumacher Homes, Inc. (Feb. 26, 2001), Geauga App. No. 2000-G-2272, unreported, appeal not allowed by, 92 Ohio St.3d 1433.
[35] Emphasis added.
[36] Council of Smaller Enterprises v. Gates (1998), 80 Ohio St.3d 661,666, quoting AT T, 475 U.S. at 649, 106 S.Ct. at 1418.
[37] Gaffney v. Powell (1995), 107 Ohio App.3d 315, 317, appeal not allowed by, 75 Ohio St.3d 1451, citing Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108.
[38] Cross, 132 Ohio App.3d at 165-166.
[39] See Council of Smaller Enterprises, 80 Ohio St.3d at 668.
[40] United Steelworkers of Am. v. Warrior Gulf Navigation Co. (1960), 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409.
[41] Moses H. Cone Memorial Hosp. v. Mercury Const. Corp. (1983),460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765. See, also, VoltInformation Sciences, Inc. v. Leland Stanford Junior Univ. Bd. ofTrustees (1989), 489 U.S. 468, 476, 109 S.Ct. 1248, 1254,103 L.Ed.2d 488.
[42] Council of Smaller Enterprises, 80 Ohio St.3d at 669, citingGibbons-Grable Co. v. Gilbane Bldg. Co. (1986), 34 Ohio App.3d 170, 173. See, also Bratt Enterprises, Inc. v. Noble Intl., Ltd. (S.D.Ohio 2000),99 F. Supp.2d 874, 884; Re/Max Intl., Inc. v. Zames (N.D.Ohio. 1998),995 F. Supp. 781, 786.
[43] Emphasis added.
[44] Birch v. Castrucci (Aug. 2, 1995), Montgomery App. No. CA 15123, unreported.
[45] K.M.C. Co., Inc. v. Irving Trust Co. (6th Cir. 1985), 757 F.2d 752,758.
[46] Cassidy v. Glossip (1967), 12 Ohio St.2d 17, 19.
[47] Aetna Fin., 83 Ohio St.3d at 471, 473.
[48] Parsley v. Terminix International Company, L.P. (S.D.Ohio Sept. 15, 1998), Western Division App. No. C-3-97-394, unreported;Neubrander v. Dean Witter Reynolds (1992), 81 Ohio App.3d 308, 311
(citations omitted).
[49] Neubrander, 81 Ohio App.3d at 309.
[50] Id. at 311-12.
[51] Haskins, 230 F.3d at 240-241, citing Rosenberg v. Merril Lynch,Pierce, Fenner Smith, Inc. (1st Cir. 1999), 170 F.3d 1, 23 (Wellford, J., dissenting); Manuel v. Honda R D Americas, Inc. (S.D.Ohio 2001),175 F. Supp.2d 987, 997.
[52] Burden v. Check Into Cash of Kentucky, LLC (6th Cir. 2001),267 F.3d 483, 492, citing Sydnor v. Conseco Fin. Servs. Corp. (4th Cir. 2001), 252 F.3d 302, 307; see, also Parsley v. Terminix InternationalCompany, L.P. (S.D.Ohio Sept. 15, 1998), Western Division App. No. C-3-97-394, unreported.
[53] Manuel, 175 F. Supp.2d 987; Parsley, supra; Cf., Neubrander,81 Ohio App.3d at 309, 311.
[54] Nottingdale Homeowners' Assn., Inc. v. Darby (1987),33 Ohio St.3d 32, 37, fn. 7.
[55] Green Tree Financial Corp.-Alabama v. Randolph (2000), 531 U.S. 79,92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373.
[56] Id., 531 U.S. at 91-92; 121 S.Ct. at 522 (footnote omitted).
[57] Id.
[58] Id. at f.n. 6.
[59] Phillips v. Assoc. Home Equity Services, Inc. (N.D.Ill. 2001),179 F. Supp.2d 840, 846; Manuel, 175 F. Supp.2d at 994; Bradford v.Rockwell Semiconductor Sys., Inc. (4th Cir. 2001), 238 F.3d 549,554.
[60] Manuel, 175 F. Supp.2d at 994.
[61] Aetna Fin., 83 Ohio St.3d at 471.
[62] Patterson v. ITT Consumer Fin. Corp. (Cal.App. 1993),14 Cal.App.4th 1659, 18 Cal.Rptr.2d 563.
[63] Aetna Fin., 83 Ohio St.3d at 473, citing Patterson,14 Cal.App.4th at 1666, 18 Cal.Rptr.2d at 566.
[64] See, R.C. Chapter 1345.
[65] Parsley, supra, citing Cosgrove v. Shearson Lehman Bros. (6th Cir. Jan. 6, 1997), No. 95-3432, 1997 WL 4783, cert. denied, 522 U.S. 864,118 S.Ct. 169, 139 L.Ed.2d 112 (1997).
[66] Gilmer v. Interstate/Johnson Lane Corp. (1991), 500 U.S. 20, 26,111 S.Ct. 1647, 114 L.Ed.2d 26.
[67] Gilmer, 500 U.S. at 28, 111 S.Ct. 1647 (citation omitted).
[68] Vincent v. Neyer (2000), 139 Ohio App.3d 848, 851; Smith v.Whitlatch Co. (2000), 137 Ohio App.3d 682, 685.
[69] Vincent, 139 Ohio App.3d at 851-52; Whitlatch,137 Ohio App.3d at 685; Karamol v. Continental Estates, Inc. (Sept. 22, 2000), Wood App. No. WD-00-012, unreported; Stehli v. Action Custom Homes, Inc. (Sept. 24, 1999), Geauga App. No. 98-G-2198, unreported.
[70] See, Ohio's Valentine Act, R.C. 1331.06; Sherman Antitrust Act, 15 U.S.C. § 15.
[71] Shover v. Cordis Corp. (1991), 61 Ohio St.3d 219, 220, overruled on other grounds in Collins v. Sotka (1998), 81 Ohio St.3d 506.
[72] Shumaker v. Ohio Dept. of Human Serv. (1996), 117 Ohio App.3d 730,736; Kramp v. Ohio State Racing Comm. (1991), 81 Ohio App.3d 186,191-192, citing Rosenberry v. Chumney (1960), 171 Ohio St. 48, 50.
[73] Birch v. Castrucci (Aug. 2, 1995), Montgomery App. No. CA 15123, unreported.
[74] See R.C. 4165.01, et seq.
[75] Civ.R. 12(B)(6).
[76] McGlone v. Grimshaw (1993), 86 Ohio App.3d 279, 285.
[77] Id.
[78] York v. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143,144.
[79] Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192.
[80] Caudle v. AAA (7th Cir. 2000), 230 F.3d 920, 922, citing Tamariv. Conrad (7th Cir. 1977), 552 F.2d 778, 781.
[81] Id. See, also, e.g., New England Cleaning Services v. AAA (1st Cir. 1999), 199 F.3d 542; Hawkins v. Nat'l Ass'n of Sec. Dealers Inc. (5th Cir 1998), 149 F.3d 330; Boraks v. AAA (1994), 205 Mich. App. 149;Cort v. AAA (N.D. Calif. 1992), 795 F. Supp. 970. 
[82] See Olsen v. Nat'l Ass'n of Sec. Dealers (8th Cir. 1996),85 F.3d 381, 382; Austern v. Chicago Bd. Options Exch., Inc. (2nd Cir. 1990), 898 F.2d 882, 885-86; Corey v. N.Y. Stock Exch. (6th Cir. 1982), 691 F.2d 1205, 1208-11; Hawkins v. Nat'l Ass'n of Sec.Dealers Inc. (5th Cir 1998), 149 F.3d 330, 331.
[83] Corey, 691 F.2d at 1211.
[84] Id. See, also New England Cleaning Services,199 F.3d at 545; Cort, 795 F. Supp. at 971.
[85] Corey, 691 F.2d at 1211.
[86] Austern, 898 F.2d at 886.
[87] New England Cleaning Services, 199 F.3d at 545, citing Austern,898 F.2d at 866.
[88] Olsen, 85 F.3d at 383.
[89] Corey, 691 F.2d at 1209.
[90] Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn.Assn. (1986), 22 Ohio St.3d 80, 83.
[91] Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors
(2000), 139 Ohio App.3d 772, 787, quoting Wolfe v. Columbia Gas Transm.Co. (March 30, 1982), Knox App. No. 81-CA-19, unreported.
[92] Galion v. Am. Fedn. Of State, Cty. Mun. Emp., Ohio Council
(1995), 71 Ohio St.3d 620, 623, paragraph two of syllabus; R.C. 2711.01et seq; see, also Corey, 691 F.2d at 1211-12.
[93] Emphasis added.
[94] Corey, 691 F.2d at 1211.